METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK, APPELLANT, V. FIRST NATIONAL BANK OF OMAHA ET AL., APPELLEES.

297 N. W. 593

FILED APRIL 18, 1941. No. 30987.

*Brome, Smith & Fiedler,* for appellant.

*Finlayson, Burke & McKie, Crossman & Barton* and *Edward A. Nelson, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER and MESSMORE, JJ., and MEYER, District Judge.

ROSE, J.

This is an action by the Metropolitan Casualty Insurance Company of New York to recoup a loss occasioned by the rascality of an impostor who surreptitiously procured a bank check payable to another person, pretended to be the payee, forged the name of the payee as first indorser, and received from an innocent merchant the proceeds of the check. The First National Bank of Omaha and Orchard & Wilhelm Company, defendants, are charged in the petition with liability for the loss as subsequent indorsers of the check guaranteeing the genuineness of the first indorse-. ment which was a forgery.

Defendants denied liability as indorsers and pleaded neg-

ligence of the drawer of the check as an estoppel defeating plaintiff's claim for the loss.

The district court dismissed the action and plaintiff appealed.

The following facts are summarized from a stipulation by the parties: On an application bearing the genuine signature of Herbert E. Ketcham, the Lincoln National Life Insurance Company of Fort Wayne, Indiana, issued to him a 2,000-dollar life insurance policy, naming his wife, Eva Boucher Ketcham, beneficiary. After her death, Herbert W. Boucher, using the mails and the name of Herbert E. Ketcham without the latter's knowledge or consent, surreptitiously procured from the insurer a change of beneficiary from Eva Boucher Ketcham to the estate of the insured Herbert E. Ketcham and a loan of $441.04 on the policy. The insurer drew and directed by mail to Herbert E. Ketcham a check payable to him on the Lincoln National Bank and Trust Company of Fort Wayne, Indiana, for the amount · of the loan, but the check was intercepted by Boucher who had signed the name of Ketcham on the application for change of beneficiary and on the application for the loan on the policy and on the note for the loan. With the check, Boucher went in person to the store of Orchard & Wilhelm Company, Omaha, represented himself to be Ketcham, the payee, offered the check in payment of an open account of $30.90 charged on the books of the merchant to Ketcham, asked for the balance in currency, indorsed the name of Ketcham on the check and received the difference between the account of $30.90 and $441.04 or $410.14. The forged indorsement was followed thereunder by the indorsement of Orchard & Wilhelm Company and the check deposited to its credit in the First National Bank of Omaha. The latter also indorsed the check and it was subsequently paid by the bank upon which it was drawn.

The Metropolitan Casualty Insurance Company of New York had indemnified or bonded the Lincoln National Life Insurance Company of Fort Wayne, Indiana, against forgery, and in discharge of that obligation, after discovery

of the fraud, paid the latter $441.04, the loss occasioned by the forged indorsement on the check, asserted by subrogation the rights of indemnitee and, as plaintiff, brought this action against the First National Bank of Omaha and Orchard & Wilhelm Company, defendants, on their alleged liability as subsequent indorsers of the check and as guarantors of the genuineness of the first indorsement which was a forgery.

The question presented on appeal is: Did plaintiff, the indemnitor, make a case for recovery of the loss from the subsequent indorsers of the check? By payment of the loss, plaintiff, under the contract of indemnity, became subrogated to any right of indemnitee to recover the loss from the subsequent indorsers, but did not acquire by subrogation any greater right. *American Surety Co. v. School District,* 117 Neb. 6, 219 N. W. 583. The test, therefore, is whether the insurer, the drawer of the check, would be entitled to a recovery on the stipulated facts in absence of the indemnity. Plaintiff relies on the statute which provides:

"Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." Comp. St. 1929, sec. 62-123.

In connection with this statute counsel for plaintiff call attention to the following rulings in a former case:

"An indorser of a negotiable instrument guaranties the genuineness of prior indorsements.

"Accordingly, where a check is drawn payable to the order of a named payee, one who takes the check on the forged indorsement of the payee and himself indorses it, is liable to the bank on which the check is drawn if that bank pays it in ignorance of the forgery, in the absence of

circumstances estopping the drawer from setting up the forgery." *First Nat. Bank of Hastings v. Farmers & Merchants Bank,* 56 Neb. 149, 76 N. W. 430.

Indorsers do not in every instance guarantee the genuineness of prior indorsements of the same instrument. To apply herein the statute as invoked would permit plaintiff to exact of defendants greater vigilance to prevent fraud than that exercised by plaintiff itself. It changed the beneficiary in a policy on an application signed by an impostor and not by the insured. It granted a loan on a policy under an application of which the insured knew nothing. It had in its possession at the time genuine signatures of insured which, if compared with spurious signatures accepted by it as genuine, might have prevented the fraud. In trusting the check to the mails, a registered letter and a demand for a receipt bearing the genuine signature of insured would quite likely have avoided the loss. Through negligence of the insurer the check fell into the hands of an impostor who found it easy, under the circumstances, to deceive Orchard & Wilhelm Company into cashing it. The conduct of insurer and the surrounding circumstances as shown by the evidence are sufficient to estop it from asserting the forgery of the first indorsement as against defendants. The same result would be reached by adopting the following doctrine:

"The weight of authority, however, seems to be decidedly in favor of the doctrine that where a check or draft is drawn or indorsed and delivered to a party to be cashed by him under the name in which it is made out or indorsed, that his signature by way of indorsement in that name is valid as between an innocent holder and the party delivering it to him. This is commonly put on the ground that the payer of the draft or the purchaser of it is simply carrying out innocently the intention of the maker or indorser." *Hoffman v. American Exchange Nat. Bank,* 2 Neb. (Unof.) 217, 96 N. W. 112.

The courts generally have adopted this doctrine in determining who must bear the loss as between a drawer who delivers a check to an impostor and one who cashes it upon

the impostor's indorsement. See cases cited in annotations in 22 A. L. R. 1228; 52 A. L. R. 1326; 112 A. L. R. 1435. The district court took this view in finding the facts and in applying the rules of law and equity thereto.

AFFIRMED.